UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE SALLAH,                              Case No. 16-14098

          Plaintiff                            Stephen J. Murphy
v.                                             United States District Judge

COMMISSIONER OF SOCIAL                         Stephanie Dawkins Davis
SECURITY,                                      United State Magistrate Judge

          Defendant(s).
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 17)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On November 18, 2016, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was

referred to the undersigned for the purpose of reviewing the Commissioner's

decision denying plaintiff's claim disability benefits.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 15, 17).  Plaintiff

also filed a reply in support of her motion.  (Dkt. 18).

B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability, disability insurance benefits, and supplemental security income on July 5, 2013, alleging that she became disabled on April 5, 2013.  (Tr. 19).  The claims were initially disapproved by the Commissioner on September 9, 2013.  *Id.*  Plaintiff requested a hearing and on June 8, 2015, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Yasmin Elias, who considered the case de novo.  (Tr. 38-83).  In a decision dated September 22, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 16-29).  Plaintiff requested a review of this decision and on September 16, 2016, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council denied plaintiff's request for review.  (Tr. 1-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED** and that this matter be **REMANDED** for further proceedings under

Sentence Four.

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1979 and was 33 years old on the alleged onset date.

(Tr. 28).  Plaintiff has past relevant work as a certified nursing assistant, which

carries a medium exertional level and is classified as semi-skilled work.  (Tr. 27).

She claims disability due to problems with her back, both knees, anxiety and

asthma. (Tr. 84).  In considering plaintiff's claim, the ALJ applied the five-step

disability analysis and found at step one that plaintiff had not engaged in

substantial gainful activity since the alleged onset date.  (Tr. 21).  At step two, the

ALJ found that plaintiff's osteoarthritis/degenerative joint disease of the knees,

anxiety, affective disorder, and alcohol/substance abuse disorder were "severe"

within the meaning of the second sequential step.  (Tr. 22).  At step three, the ALJ

found no evidence that plaintiff's combination of impairments met or equaled one

of the listings in the regulations.  (Tr. 22-24).  At step four, the ALJ found that

plaintiff was unable to perform her past relevant work.  (Tr. 27).  The ALJ

concluded that plaintiff had the residual functional capacity to perform a limited

range of light work as follows:

> …[T]he claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR

3

> 404.1567(a) and 416.967(a) except the claimant can only
> occasionally climb ramps or stairs, or kneel, crouch or
> crawl.  The claimant may never climb ladders, ropes or
> scaffolds.  The claimant may frequently balance with the
> use of a hand-held assistive device.  The claimant is
> limited to simple, routine, repetitive tasks with only
> occasional interaction with the public or coworkers.

(Tr. 24).  At step five, the ALJ denied plaintiff benefits because plaintiff could

perform a significant number of jobs available in the national economy.  (Tr. 28-

29).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become

7

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

            1.    The Parties' Arguments Regarding the ALJ's Consideration of
                   State Disability Decision

Plaintiff argues that the ALJ erred in failing to consider the State of

Michigan disability determination in her decision, in which the state ALJ

concluded that plaintiff was unable to perform even sedentary work under nearly

identical disability rules.  At the time of the hearing and decision in this matter,

Social Security Ruling (SSR) 06-03p required that decisions of other government

agencies be considered and "not ignored" when evaluating the evidence in the case

record.  Although the ruling acknowledged that such decisions were not binding, it

clearly stated that "evidence of a disability decision by another governmental or

nongovernmental agency cannot be ignored and must be considered" (SSR 06-

03p).  Further, SSR 06-03p noted that "(t)hese decisions, and the evidence used to

make these decisions, may provide insight into the individual's mental and

physical impairment(s) and show the degree of disability determined by these

agencies based on their rules."[2]  In this case, the record contains a December 19,

2014 decision from the State of Michigan Department of Human Services, where

ALJ Christian Gardocki determined that plaintiff's mental and physical

impairments "would likely preclude even sedentary employment."  (Tr. 314-323).

This finding was based, in part, on an analysis of evidence in the record which

suggested that plaintiff could not meet the standing/walking requirements of even

sedentary work.  (Tr. 321).  Specific to this analysis was a Medical Examination

Report dated July 25, 2014 from plaintiff's physician,[3] which provided various

physical restrictions, including a restriction that plaintiff was limited to less than

two hours of standing and walking in an eight hour workday.  *Id.*  ALJ Gardocki

also discussed plaintiff's diagnosis of tri-compartmental arthritis, which he stated

is "accepted to be a significantly worse condition than the more common

unicompartmental arthritis."  (Tr. 322).  This condition, he felt, supported a finding

that plaintiff would be unable to perform the ambulation and/or standing

requirements of sedentary work.  *Id.*  Further, the ALJ concluded that plaintiff was

suffering from "fairly serious psychological problems that limit her concentration."

(Tr. 323).

---

[2] SSR 06-03p has since been rescinded by Federal Register Notice Vol. 82 No. 57, page 15263 effective March 27, 2017.  The Federal Register Notice specifically states that the rescission will only be "effective for claims filed on or after March 27, 2017."

[3] Notably, the opinion is not part of the record in this case, for reasons not clear to the Court.

Although ALJ Elias stated at the hearing that she had read the State of Michigan disability determination from ALJ Gardocki, plaintiff points out that ALJ Elias' hearing decision contains no discussion of the state disability decision. Plaintiff also points out that the state decision is even incorrectly identified in the Exhibit List accompanying the ALJ's decision – it was described as "Misc Non-Disability Development."  (Tr. 32).  Thus, according to plaintiff, anyone reviewing only ALJ Elias' decision in this matter would have no idea that a state disability decision was even in the record, let alone considered by the ALJ.

Plaintiff contends that this case should be remanded because the ALJ failed to explain whether any weight was afforded to the disability determination of another government agency.  *See Burrows v. Comm'r of Soc. Sec.*, 2012 WL 5411113 (E.D. Mich. Sept. 28, 2012), adopted by 2012 WL 5413174 (E.D. Mich. Nov. 6, 2012) (remanding where the ALJ failed to obtain records related to the plaintiff's application for state disability benefits, and where there was no indication that any consideration was given to the disability determination made by the State of Michigan); *McPhee v. Comm'r of Soc. Sec.*, 2013 WL 3224420 (E.D. Mich. June 25, 2013), (remanding where "the ALJ's mere mention of the state agency determination and cursory rejection of the determination as "based on its own rules" is insufficient consideration" warranting remand).  According to plaintiff, the foregoing cases suggest that courts have not hesitated to remand even

12

in instances where a state disability determination was mentioned, but not adequately discussed, in a decision.  Here, the decision of disability by the State of Michigan ALJ was not even mentioned in ALJ Elias' decision, let alone adequately discussed.  Thus, plaintiff maintains that it is impossible to discern to what extent this decision was considered, if at all.  Consequently, plaintiff urges the Court to remand for further explanation of the consideration given to the State of Michigan disability determination, which is especially relevant to this case given that the State ALJ's decision indicates that "[g]enerally, state agencies such as DHS must use the same definition of SSI disability as found in the federal regulations.  42 CFR 435.540(a)."  (Tr. 315).

In response, the Commissioner argues that the ALJ properly considered the State of Michigan disability determination.  The state decision and order that reinstated plaintiff's Michigan State Disability Assistance (SDA), indicated that it was "a close call," but plaintiff's impairments "would likely preclude the performance of even sedentary employment.  Accordingly it is found that [Plaintiff] is a disabled individual and that DHS erred in denying [her] SDA application."  (Tr. 323).  As explained in the regulations and in SSR 06-03p, the Commissioner is not bound by decisions on disability by other governmental and nongovernmental agencies.  *See* 20 C.F.R. § 404.1504; SSR 06-03p, 2006 WL 2263437, at *45596-45597 (Aug. 9, 2006); *see also Turcus v. Soc. Sec. Admin.*,

110 Fed. Appx. 630, 632 (6th Cir. 2004) ("[A] decision by another government agency as to an individual's disability is not binding upon the Social Security Administration.").  The Commissioner acknowledges, however, as further clarified in SSR 06-03p, that the Commissioner is "required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies."  SSR 06-03p, 2006 WL 2263437, at *45596.  Consequently, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."  *Id*.

According to the Commissioner, the ALJ did not inappropriately ignore the State disability determination, as required by the regulations and SSR 06-03p.  First, it is uncontested that the State disability decision was part of the administrative record as documented in the Exhibit List.  (Tr. 32, 314-323).  The Commissioner maintains that the inclusion of the records in the list of exhibits is adequate evidence that the ALJ considered it.  *See* Social Security Administration, Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-1-20 (directing that exhibit lists be prepared in final form in cases involving partially or wholly adverse decisions to comply with "the constitutional due process requirement that a claimant has the right to know upon what basis the ALJ is making the decision in his/her case").  Next, the Commissioner points out that the ALJ specifically

14

indicated that she considered "the entire record" in completing the five-step

sequential evaluation process. (Tr. 21). Finally, as plaintiff acknowledged, the

ALJ also affirmed at the hearing that she read the entire State disability

determination decision. (Tr. 47). Therefore, even if the ALJ could have more

specifically labeled the exhibit, the Commissioner contends that plaintiff's

argument simply stretches too far in stating that it is "impossible to discern" if the

State disability decision was even considered.

To the extent plaintiff argues that the case should be remanded because the

ALJ did not specifically discuss the State disability determination in the decision,

the Commissioner argues that the cases on which plaintiff relies for support are

distinguishable. First, the Commissioner challenges plaintiff's reliance on

*Burrows v. Comm'r of Soc. Sec.*, 2012 WL 5411113 (E.D. Mich. Sept. 28, 2012),

rep. & rec. adopted, 2012 WL 5413174 (E.D. Mich. Nov. 6, 2012). In *Burrows*,

the claimant testified that she had begun receiving State disability benefits, but the

ALJ failed to obtain any records pertaining to the claimant's approval for those

benefits. *Burrows*, 2012 WL 5411113, at *12. Therefore, the Court concluded

that there was "no indication that [the ALJ] gave that determination any

consideration." *Id*. Whereas here, the ALJ not only had the opportunity to review

the decision, but also responded on the record, to plaintiff's counsel's argument

that plaintiff had been "awarded state disability benefits based on an inability to

perform even sedentary work." (Tr. 46-47). Specifically, the ALJ affirmed that she had received and "read [the decision] completely" (Tr. 47). She continued however, stating, "[a]nd I just have a few questions for your client." *Id*.

With regard to *McPhee v. Comm'r of Soc. Sec.*, 2013 WL 3224420 (E.D. Mich. June 25, 2013), the Commissioner points out that even though the ALJ's consideration of a State agency disability determination was ruled "insufficient" in that case, the Court also recognized that there is "no bright line rule to determine whether an ALJ has sufficiently considered a piece of evidence." *Id*. at *14. In this case, where: (1) the ALJ's decision included the State agency disability determination as an exhibit; (2) the ALJ indicated that she considered all of the evidence of record; and (3) the ALJ affirmed at the administrative hearing that she had read the decision but still had questions for plaintiff – a fact that was not present in *McPhee* – the Commissioner maintains that the ALJ's consideration of the State disability determination decision is sufficient. The Commissioner reasons that SSR 06-03p simply mandates that other governmental agency decisions not be ignored, and careful review of the record in this case simply does not show that the State disability determination decision was ignored.

The Commissioner also highlights the fact that SSR 06-03p states only that an adjudicator "should" explain his or her consideration of a decision from another agency. Therefore, the ALJ in this case complied with the minimum requirements

of SSR 06-03p by considering the decision as reflected in her statement at the hearing and the inclusion of the decision in the exhibit list.  *See* SSR 06-03p, 2006 WL 2263437, at *45596; *see also Saunders v. Comm'r of Soc*. Sec., 2010 WL 1132286, at *8 (W.D. Mich. Mar. 3, 2010), rep. & rec. adopted, 2010 WL 1132245 (W.D. Mich. Mar. 23, 2010) (explaining that "[i]f the Social Security Administration had intended to require explanations, it would have selected mandatory language rather than using the term 'should'").

The Commissioner suggests that it is also notable that plaintiff's state adjudicator concluded that "[t]he most compelling evidence supporting walking/standing restrictions was the diagnosis [of tri-compartmental arthritis]" (Tr. 322).  Yet, as the Sixth Circuit Court of Appeals has emphasized, the "mere diagnosis of arthritis . . . says nothing about the severity of the condition" for purposes of disability under the Act.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted).  According to the Commissioner, unlike the State adjudicator, here, the ALJ did not rely on a diagnosis.  Rather, she considered all evidence of record, including the State disability decision, to thoroughly evaluate all of plaintiff's impairments, and supportably concluded she was not disabled under the five step sequential evaluation process.  (Tr. 21-29).  Based on the foregoing, the Commissioner maintains that the ALJ met the requirements of SSR 06-03p, and proceeded to ask plaintiff questions despite plaintiff's counsel's

17

assertion that the disability decision showed that plaintiff was not capable of even

sedentary work.  Indeed, the ALJ completed the five step sequential evaluation

process, specifically concluding that all opinions were considered in accordance to

SSR 06-3p.  (Tr. 24).

        2.      Analysis of State Agency Decision

Both parties acknowledge that the Commissioner is not bound by a decision

from another agency, and that SSR 06-03p provides that such decisions must be

considered by the ALJ:

> [W]e are required to evaluate all the evidence in the case
> record that may have a bearing on our determination or
> decision of disability, including decisions by other
> governmental and nongovernmental agencies (20 CFR
> 404.1512(b)(5) and 416.912(b)(5)).  Therefore, evidence
> of a disability decision by another governmental or
> nongovernmental agency cannot be ignored and must be
> considered.

*Willis v. Comm'r of Soc. Sec.*, 2012 WL 7608133, at *15 (E.D. Mich. Oct. 29,

2012), report and recommendation adopted, 2013 WL 718506 (E.D. Mich. Feb. 27,

2013) (quoting SSR 06-03p, 2006 WL 2329939, at *6).  According to the

Commissioner, this ruling does not mandate a written explanation of such

consideration because of the permissive language "should":

> [B]ecause other agencies may apply different rules and
> standards than we do for determining whether an
> individual is disabled, this may limit the relevance of a
> determination of disability made by another agency.
> However, the adjudicator *should* explain the

> consideration given to these decisions in the notice of
> decision for hearing cases and in the case record for
> initial and reconsideration cases.

*Taylor v. Comm'r of Soc. Sec.*, 2015 WL 1310802, at *7 (W.D. Mich. Mar. 24,

2015) (quoting SSR 06-03p, 2006 WL 2329939, at *6-7) (emphasis added in

*Taylor*).  In *Taylor*, the Court observed that "[a]s evident from the plain language

of the regulations, while it is preferable for an ALJ to explain the consideration he

or she gave to a state agency determination, it is not required."  *Id.*  The *Taylor*

court concluded that the ALJ satisfied the requirements of SSR 06-03p, even

though she had failed to explain in her opinion what, if any, consideration she had

given to the agency decision, because it was clear from the record that she had

considered it, given her findings that she considered the entire record and the fact

that the decision was in the record.  Moreover, even if the ALJ erred in failing to

discuss the state decision, it was harmless because, amongst other things, the state

decision was conclusory and failed to point to what, if any, medical records were

relied on for its conclusion.  *Id.* at 7.  Similarly, in *Saunders v. Comm'r of Soc.*

*Sec.*, 2010 WL 1132286, at *8 (W.D. Mich. Mar. 3, 2010), adopted by 2010 WL

1132245 (W.D. Mich. Mar. 23, 2010), the court concluded that "[i]f the Social

Security Administration had intended to require explanations, it would have

selected mandatory language rather than using the term 'should.'"  Yet notably,

just as in *Taylor* in *Saunders*, the court also determined that based on the facts

presented there, even if the ALJ's failure to discuss the State determination of

disability did constitute error, it would be considered harmless because the State

decision at issue was comprised of "bare conclusions," that did not "result in any

written opinion identifying the medical records the State considered and those

specific records supporting the State's conclusion." *Id.*   While appreciating the

point made in both *Taylor* and *Saunders* that the language of the ruling at issue is

permissive rather than mandatory, they hold less persuasive value in the face of a

substantive State agency decision containing a fully-explained rationale and

reference to supporting records.

Moreover, the case law in this District and elsewhere within the Sixth

Circuit leads the Court in a different direction.  As an initial observation however,

the Commissioner's argument challenging plaintiff's reliance on *Burrows v.

Comm'r of Soc. Sec*. is well-taken.  2012 WL 5411113 (E.D. Mich. Sept. 28,

2012), adopted by 2012 WL 5413174 (E.D. Mich. Nov. 6, 2012).  In *Burrows*, the

pro se plaintiff testified that she was approved for state disability benefits in March

2009 and at the time of the hearing, was receiving benefits.  *Id*. at *12.  However,

there was no indication in the record that the ALJ sought to obtain records related

to the plaintiff's application for state disability benefits or that he gave any

consideration to the disability determination made by the State of Michigan.  *Id*.

Consequently, the court remanded the matter to the ALJ so the ALJ could obtain

records pertaining to the plaintiff's approval for state disability benefits and to explain the consideration ultimately given to such records in formulating his decision as to whether the plaintiff is disabled under the Act.  *Id.*  *Burrows* is distinguishable in several important respects.  First, the claimant was proceeding without an attorney at the hearing level, thus the ALJ had a heightened burden to develop the record.  Second, the state decision was in fact, absent from the record. And third, there was no indication from the record that the ALJ made any effort to obtain it.  Thus, it could logically be concluded that the state decision was, in fact, ignored.  Not one of these facts is present in plaintiff's case, and these distinctions serve to substantially diminish *Burrows*' persuasive value in the context of the instant case.

On the other hand, in what appears to be one of the only published cases on the issue in this district, *King v. Comm'r of Soc. Sec.*, 779 F.Supp.2d 721 (E.D. Mich. 2011), the court was faced with facts more closely aligned with the instant case, and found that the ALJ's lack of discussion about another agency's disability determination necessitated remand.  In *King*, the ALJ's decision used language stating that she "does consider" the Veterans Affairs ('VA') determination that plaintiff had 100% permanent disability.  The ALJ also cited the regulation that states that another agency's disability determination does not bind the Commissioner, but neglected to explain whether she accorded any weight to the

VA determination. *Id*. at 726. The court found that "there may be good reasons for disregarding the determination, but the Court on review is left to speculate on the ALJ's rationale in the absence of any meaningful discussion of the evidence." Based on the above reasoning, the court remanded the case "for further consideration of the evidence in light of a better-developed record of the VA disability determination." *Id*. at 727; *see also Lowery v. Comm'r of Soc. Sec.*, 886 F.Supp.2d 700, 717 (S.D. Ohio 2012) (remanding for failure to consider VA's decision to grant disability benefits when ALJ only stated "He is currently receiving Veteran's Administration disability benefits" in the "Summary of Plaintiff's Testimony" section and did not discuss the VA findings further); *Wilmore v. Comm'r of Soc. Sec.*, 2014 WL 320072, at *4 (E.D. Mich. Jan. 29, 2014) (Duggan, J.) (Rejecting the Commissioner's position that the ALJ had no obligation to consider the VA disability rating unless it was 100% and remanding for further development of the record on the plaintiff' VA disability rating).

Additionally, in *McPhee v. Comm'r of Soc. Sec.*, 2013 WL 3224420, at *14 (E.D. Mich. June 25, 2013), the Court concluded that more analysis was necessary where the state agency at issue (DHS) essentially followed the same five step analysis as the Commissioner. Indeed, the state ALJ decision at issue in *McPhee* followed the same five-step sequential analysis set forth in the Social Security Act and concluded that plaintiff was unable to perform the full range of sedentary work

22

activities on a regular and continuing basis.  *Id*.  In *McPhee*, the ALJ did not

wholly ignore the state disability determination, but the court concluded that the

ALJ's mere mention of the state agency determination and the cursory rejection of

the determination as "based on its own rules" was insufficient consideration.  The

*McPhee* court remanded the matter and directed the ALJ to obtain additional

records pertaining to the plaintiff's approval for state disability benefits, if deemed

necessary, and to adequately explain the consideration given to the records

pertaining to the plaintiff's approval for state disability benefits in formulating his

decision as to whether the plaintiff was disabled under the Act.  *Id*.

   One court has suggested that *King* and its progeny has been undermined by

more recent cases from within the Sixth Circuit.  *See e.g.*, *Ross v. Colvin*, 2016 WL

1733478, at *2 (W.D. Ky. Apr. 29, 2016) ("More recent decisions from within the

Sixth Circuit, however, have undermined reading *King* as establishing a rule that

Administrative Law Judges are required to assign weight to the VA's decision.").

*Ross* points to *LaRiccia v. Comm'r of Soc. Sec*. in which the Sixth Circuit indicated

it "has not set forth a specific standard regarding the weight the Commissioner

should afford a 100% disability determination by the VA."  549 Fed. Appx. 377,

387 (6th Cir. 2013) (citing *Stewart v. Heckler*, 730 F.2d 1065 (6th Cir. 1984)

(noting in passing the claimant's VA 100% disability rating)).  *Ross* also relied on

*Ritchie v. Comm'r of Soc. Sec.*, that a disability rating from the VA "is entitled to

consideration" but is not entitled to any particular weight.  540 Fed. Appx. 508, 510 (6th Cir. 2013).  In neither of these cases, however, did the Sixth Circuit suggest that it is appropriate for an ALJ to simply bypass any discussion of the agency decision at all in the decision as suggested in *Taylor* and *Saunders*.  In fact, in both *Ritchie* and *LaRiccia*, the ALJ expressly discussed the VA disability decisions.  *Ritchie*, at 540 Fed. Appx. at 510-511; *LaRiccia*, 549 Fed. Appx. at 387-388; *see also*, *Harrier v. Colvin*, , at *2 (E.D. Mich. July 10, 2017) (Murphy, J.) (Noting that decisions of other agencies must be considered by the ALJ, but rejecting claim of error because the ALJ described the VA records in detail.).

Based on the foregoing authority, the undersigned concludes that the ALJ failed to adequately discuss and analyze the state agency decision as required by SSR 06-03p, thus resulting in an error requiring remand.  The Commissioner's attempt to distinguish *McPhee* based on the ALJ's affirmation at the administrative hearing that she read the decision but still had questions for plaintiff is not sufficient.  Indeed here, there is not even a "cursory rejection" of the opinion as there was in *McPhee*.  The ALJ's questions at the hearing simply do not provide the Court with sufficient information to determine if and how the ALJ assessed the state agency opinion regarding disability, which was a lengthy, detailed opinion and not a mere disability rating or other conclusory decision.

Furthermore, it is evident from reviewing the state agency decision that the state ALJ relied on one or more medical records that are not a part of this record. While the ALJ in this case appears to have discussed at least some of the medical records on which the state agency decision was based, the ALJ did not have the benefit of the physician opinion (which may or may not be from a treating physician) regarding plaintiff's restrictions.  Thus, unlike the cases cited above, in which courts were able to satisfy themselves that the ALJ was operating from a comprehensive understanding of the basis for the state agency decision, it is unclear whether and to what extent the ALJ appreciated the basis for the state finding of disability.  Even acknowledging that the ALJ is not required to give any particular weight to a state agency decision, the court nevertheless must be able to discern the ALJ's reasoning for an inconsistent result.  Unfortunately, here the Court is left to speculate regarding what consideration the ALJ gave to the decision, which is improper.  *King*, at 727.  Moreover, as explained in *McPhee*, it is significant that the state agency decision applied the same five step decision-making process as the Commissioner applies (unlike the decisions involving VA disability ratings), which makes the decision more relevant than an agency decision applying a differing standard.  *See* SSR 06-03p; 2006 WL 2329939 (S.S.R. Aug. 9, 2006) ("In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled,

this may limit the relevance of a determination of disability made by another agency.").  Thus, along the spectrum of factual scenarios presented by the cases discussed above, even allowing for the permissive language of the Ruling, plaintiff's state agency disability decision falls into the category of those which "should" be discussed in the ALJ's ruling.

The undersigned concludes that this error was not harmless, as posited in the Commissioner's *post-hoc* analysis of the state agency decision.  *See Christephore v. Comm'r Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a de novo review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence.  Moreover, it is the ALJ's rationale that is under review, not defense counsel's."); *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. 1993) (The court "may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 50, 103 (1983)); *Hyatt Corp. v. N.L.R.B*., 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order. . . .   The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu

of reasons and findings enunciated by the Board.'").  In rejecting the plaintiff's

argument that the ALJ should have obtained the medical records and opinions

underpinning a Veteran's Administration decision regarding disability, one court

observed that "Courts in this district have held that when another government

agency finds an SSA claimant to be disabled, any error by the ALJ in failing to

consider that decision is harmless 'when the other agency's decision presents only

bare conclusions or approval of disability benefits, without any medical opinions

or underlying reasons or standards supporting such a finding, an ALJ's failure to

consider that decision is harmless.'"  *Cooper v. Comm'r of Soc. Sec.*, 2017 WL

3923984, at *6 (E.D. Mich. Aug. 21, 2017), report and recommendation adopted

2017 WL 3891971 (E.D. Mich. Sept. 6, 2017) (quoting *Vanderpool v. Comm'r of

Soc. Sec.*, 2013 WL 5450276, at *1 (E.D. Mich. Sept. 30, 2013) (collecting cases).

However, as discussed above, the state agency decision here is neither conclusory

nor unsupported by medical opinions and medical evidence.  (Tr. 314-323).

Rather, the state agency decision shows that extensive medical records were

reviewed, including at least one opinion from a possible treating physician which is

not in the present record.  *Id*.  Thus, the ALJ's assessment of the opinion and its

underlying support may be consequential.  Just as in *McPhee*, this matter should be

remanded so the ALJ can obtain additional records pertaining to plaintiff's

approval for state disability benefits, if she deems that necessary, so that she can

adequately explain the consideration she gives the decision and underpinning records in formulating her decision as to whether plaintiff is disabled under the Act.

Plaintiff's remaining claims of err do not support remand, and in view of the undersigned's recommendation above do not require further analysis. However, for the sake of completeness, and to provide some guidance to the ALJ as to the scope of the remand should this recommendation be adopted, they are analyzed below.

### 3. Treating physician opinion

Plaintiff's treating physician, Dr. Roger Harris completed a form regarding plaintiff's eligibility for medical transportation services based on an inability to use public transportation. (Tr. 437). In this form, Dr. Harris indicated that plaintiff was unable to walk .5 miles, and was unable to stand for short periods of time. *Id.* The ALJ afforded Dr. Harris' opinion form little weight, noting first that "Doctor Harris is not considered to be an acceptable medical source." (Tr. 27). Plaintiff points out that the ALJ was incorrect because record shows that Dr. Harris is a DO (Doctor of Osteopathic Medicine), which is clearly an acceptable medical source pursuant to 20 C.F.R. § 404.1513(a). (Tr. 427). The ALJ also stated that Dr. Harris' opinion was delivered in a check-off form, and cited 9th Circuit case law indicating that an ALJ "can permissibly reject evaluations 'because they were

check-off reports that did not contain any explanation of the bases of their conclusions.'"  *Id.*  Plaintiff asserts that a check box form might not be given as much consideration as one accompanied by a narrative or explanation, this factor alone should not permit complete rejection of such an opinion.

The Commissioner acknowledges that the ALJ referred to the definition of an acceptable medical source outlined in 20 C.F.R. § 404.1513(a) and indicated that Dr. Harris was not an acceptable medical source based on that definition. However, the Commissioner also points out that the ALJ then proceeded to evaluate the one-page letter in accordance with the factors enumerated in 20 C.F.R. § 404.1527, reasonably assigning it only "little weight," and even identifying the form as being from "Doctor Harris."  Therefore, the Commissioner maintains that even if the ALJ erred in referencing 20 C.F.R. § 404.1513(a), she nevertheless properly evaluated the form thereafter.

The opinion of a treating physician should be given controlling weight if it is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion.  These reasons must be supported by the evidence in the case record, and must be

29

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Once an ALJ has determined that a treating source opinion is not entitled to

controlling weight, the ALJ must apply specific factors to resolve the question of

what weight will be assessed. Those factors include, (1) the length of the

treatment relationship and frequency of examination, (2) the nature and extent of

the treatment relationship, (3) supportability of the opinion, (4) consistency of the

opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.*; see also Wilson, 378 F.3d at 544. Failure to analyze a treating source opinion

under the two-prong controlling weight test amounts to the failure to provide good

reasons for giving that opinion less than controlling weight. *Gayheart*, at 376-77.

Violation of the rule constitutes harmless error if the ALJ has met the goals of the

procedural requirement—to ensure adequacy of review and to permit the claimant

to understand the disposition of his case—even though he failed to comply with the

regulation's terms. *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th

Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir.

2004).

The undersigned concludes that even if there were an error associated with

the ALJ's identification of Dr. Harris or other *Gayheart* error here, such errors are

harmless because like the facts in *Coldiron*, *supra*, the ALJ met the goals of the procedural requirements of the treating physician rule.  As the Commissioner suggests, the ALJ properly discounted the opinion because Dr. Harris provided no rationale for his opinion.  Indeed, the one-page letter did not include any narrative support for Dr. Harris' findings.  (Tr. 27, 437).  The ALJ also properly discounted Dr. Harris' findings because the limitations were "not supported elsewhere in the medical evidence of record."  (Tr. 27).  The ALJ gave great weight to the opinion of Dr. Paul Dionisopoulos, who performed a consultative examination in September 2013.  (Tr. 26, 354-356).  Dr. Dionisopoulos noted plaintiff's bilateral knee pain, but indicated that no cyanosis, clubbing, edema, or atrophy could be appreciated.  (Tr. 355).  There was also full range of motion in all lower extremities, a negative straight leg raise, a normal motor examination, and a normal reflex examination.  *Id*.  Dr. Dionisopoulos also indicated plaintiff could ambulate without assistance or "any major degree of pain."  *Id*.  Additionally, Dr. Stephanie Green, a State Agency consultant, found plaintiff could perform a limited range of light work, to include a specific finding that plaintiff could stand and or walk for about six hours in an eight-hour workday.  (Tr. 91-92).  The Commissioner points out that the ALJ, relying on plaintiff's reported back and knee pain to Dr. Dionisopoulos, found that plaintiff was further limited to sedentary work.  (Tr. 26).  Thus, the undersigned agrees with the Commissioner

that the record supports the ALJ's finding that Dr. Harris' limitations were not supported by other evidence, and thus, any error is harmless.  (Tr. 27).

While plaintiff takes issue with the ALJ's finding that Dr. Harris did not provide sufficient rationale for his findings, claiming that the ALJ "wholly" rejected the evaluation based exclusively on the fact that it appears on a check-off form, the undersigned notes that the ALJ did not completely reject the evaluation, but assigned it only "little weight."  (Tr. 27).  This argument ignores, of course, the fact that the ALJ discounted Dr. Harris' evaluation for reasons other than its "check off" format, as discussed above.  Thus, the ALJ did not wholly reject the opinion based sole on the check-box form, but rather provided additional and reasonable reasons for discounting it.

### 4.   Credibility

"Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379

(6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it

conflicts with medical reports, the claimant's prior statements, the claimant's daily

activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other

symptoms is in issue, after the ALJ finds a medical condition that could reasonably

be expected to produce the claimant's alleged symptoms, he must consider "the

entire case record, including the objective medical evidence, statements and other

information provided by treating or examining physicians . . . and any other

relevant evidence in the case record" to determine if the claimant's claims

regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1;

*see also* 20 C.F.R. § 416.929. "Consistency between the plaintiff's subjective

complaints and the record evidence tends to support the credibility of the

[plaintiff], while inconsistency, although not necessarily defeating, should have the

opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th

Cir. 2011).

The undersigned finds no compelling reason to disturb the ALJ's credibility

findings. The ALJ provided the following credibility analysis:

> I give reduced weight to the allegations and testimony of
> the claimant with respect to the extent that her
> impairments preclude the performance of all work. I find
> that the claimant's testimony is not credible for several
> reasons. First, the claimant initially denied alcohol and
> marijuana use hut, when pressed and presented with

33

medical records to the contrary, admitted her marijuana use and attempted to minimize it. The claimant's reports as to her relationship with her husband are also inconsistent, as documented above.  Despite the claimant's allegations of severe gait disruption, treatment notes repeatedly document a normal gait and station, and generally normal physical findings.  I find that the medical evidence of record as a whole simply does not support the degree of limitation alleged by the claimant. However, I do note that the claimant's ability to function can reasonably he restricted by her impairments in a manner set forth in the residual functional capacity in finding five above.

(Tr. 27).

(a).    Substance abuse

Plaintiff finds fault with the ALJ's conclusion that her testimony was "not credible" for reasons unsupported by the record.  She first cited plaintiff's testimony that she did not use drugs or alcohol, noting that "[f]irst, the claimant initially denied alcohol and marijuana use but, when pressed and presented with medical records to the contrary, admitted her marijuana use and attempted to minimize it."  (Tr. 27).  Plaintiff argues that this is a gross misrepresentation of the actual testimony provided by plaintiff, who answered "no" when asked, in the present tense, if she used drugs or drank alcohol.  (Tr. 62).  Later, the ALJ asked about drug and alcohol use again, citing the September 2013 mental status exam during which the claimant stated she previously drank alcohol heavily, and that she continued to smoke marijuana about one time per week to deal with her anxiety.

(Tr. 351).  Plaintiff then responded with the following:  "[o]h, I am sorry. You know, the initial question, I thought you meant as of right now" before going on to explain that she had been sober for approximately a year and a half, and that her previous abusive relationship had led her to drinking and smoking marijuana.  (Tr. 73).  Because the ALJ did ask her first question in the present tense, plaintiff says it is entirely understandable for her to have answered that she did not do drugs or drink at the present time – something which is further well supported by the record, as treatment notes consistently fail to document any ongoing substance use issues, nor was this even an active diagnosis in her more recent treatment records (*see e.g.*, Tr. 513).

According to the Commissioner, the ALJ provided context for her findings regarding substance abuse by explaining that plaintiff had changed her testimony, and she made this observation after also noting that plaintiff had not relayed consistent substance abuse history.  Specifically, the ALJ noted plaintiff's discrepancies in her substance abuse history as reported to Dr. Cox or as reported to others.  For example, plaintiff told Dr. Cox that she drank and smoked marijuana in August 2013 but that she had not drank heavily for three years.  (Tr. 351).  Yet, just three months later, in November 2013, Plaintiff reported that she last drank in December 2012 and that she had not drank heavily for two to three years.  (Tr. 358).  Then, in August 2014, plaintiff stated she had been sober for two years and

denied any other history of substance abuse. (Tr. 484). While plaintiff emphasizes her hearing testimony wherein she indicated that she had answered the "initial question" as to her recreational drug use or alcohol use as if the ALJ "meant as of right now," the Commissioner correctly points out that her hearing testimony does not account for the other documented inconsistencies in her substance abuse history as reported to treatment providers. Thus, in the view of the undersigned, plaintiff has not met her burden of showing that the ALJ's credibility finding in this regard is unsupported by substantial evidence.

(b). Statements regarding marriage

Plaintiff also takes issue with the ALJ's determination that plaintiff was not fully credibly due to inconsistent statements made about her marriage – presumably referring to plaintiff's statements made to doctors in Rhode Island that her husband was kind and supportive, which contrasts later reports made to doctors in Michigan that she was the victim of domestic abuse, and fled Rhode Island to escape her abuser. (Tr. 27). Plaintiff testified that the reason she had previously maintained that she was in a healthy relationship was because it was not until she was in counseling that she was told that most women "try to make excuses for the man or say it is their fault," and added that her mother and aunt had to sit her down and tell her it was not her fault. (Tr. 49). She further testified that she had previously always thought it was something she was doing wrong, and she finally

36

came to realize "that it was just who he was."  *Id.*  According to plaintiff, the

hearing decision never discussed the above testimony of plaintiff.  Therefore, she

argues that the ALJ's credibility finding in this regard is also not supported by

substantial evidence.  *See Davis v. Apfel*, 133 F.Supp.2d 542, 547 (E.D. Mich.

2001) ("a substantiality of evidence evaluation does not permit a selective reading

of the record. Substantiality of the evidence must be based on the record taken as a

whole").  According to plaintiff, the record as a whole contains plaintiff's

testimony providing a perfectly understandable explanation for covering up her

abuse.  Thus, plaintiff maintains that the ALJ's failure to discuss such testimony

reflects lack of substantial evidence.

With respect to the ALJ's discussion of plaintiff's marital relationship, the

Commissioner says that ALJ also accurately noted that plaintiff described her

husband as being kind and supportive (Tr. 25, 359) but then described him as being

abusive (Tr. 25, 380).  The ALJ specifically allowed plaintiff the opportunity to

address this inconsistency (Tr. 48), and she indicated that she described her

husband as kind and supportive before going to counseling, where "they told me

that most of the women try not to – try to make excuses for the man."  (Tr. 49).

Therefore, the Commissioner maintains that the ALJ was accurate that plaintiff,

regardless of her motivations, had made inconsistent statements as to the nature of

her marital relationship over time.  (Tr. 27).

Here, plaintiff's complaint is not that she did not make inconsistent statements, but rather that she provided understandable reasons for the inconsistencies. Plaintiff has not cited any authority for the proposition that it is improper to consider conflicting statements under these circumstances. In any event, while it is true that the ALJ did not discuss the circumstances leading to plaintiff's contradictory statements about her abuse at the hands of her former husband, the ALJ's credibility determinations are still supported by substantial evidence based on other reasons (other inconsistencies in the record) for discounting her credibility. Additionally, the ALJ did not find plaintiff to be wholly incredible, as evidenced by the inclusion of limitations not found by the reviewing physician. Thus, the undersigned concludes that plaintiff has not provided a sufficient basis for overturning the ALJ's credibility determinations.

(c).    Gait disruption

Finally, the ALJ found that plaintiff's allegations of severe gait disruption to be not credible, due to the fact that "treatment notes repeatedly document a normal gait and station, and generally normal physical findings." (Tr. 27). According to plaintiff, the ALJ does not cite to any records supporting this specific claim. Nor does her credibility analysis acknowledge that the claimant was in fact prescribed a cane due to severe arthritis in her knees. (Tr. 449). "This inconsistency in the administrative opinion is another example of the failure to assess the record in

context, as an integrated whole." *Sessor v. Comm'r of Soc. Sec.*, Case No. 11-

11621 (E.D. Mich. Sept. 25, 2012).  In response, the Commissioner points out that

the ALJ identified normal gait and physical examinations with specific references

to the record (Tr. 25, 26, 355, 460) and plaintiff does not contest such normal

findings.  The undersigned agrees with the Commissioner that the ALJ provided

specific citations to the record to adequately dispute plaintiff's allegations of gait

disturbance.  Thus, this credibility determination is supported by substantial

evidence and the undersigned finds no basis to disturb the ALJ's credibility

findings in this regard.

And, with regard to the cane prescription, the ALJ specifically

acknowledged plaintiff needed to use a cane by incorporating the need for an

assistive device into the RFC.  (Tr. 24).  Moreover, the ALJ admitted into evidence

the very prescription identified in plaintiff's brief.  (Tr. 33, 449).  The

Commissioner also points out that the prescription for a cane simply identifies the

type of cane to order and does not endorse any functional limitations.  (Tr. 448-

449).  Therefore, according to the Commissioner, plaintiff's identification of the

cane prescription fails to undermine the subjective symptom evaluation, as the ALJ

did not base her credibility determination on plaintiff's use of a cane, and even

accepted her use of the cane as reflected in the RFC.  (Tr. 24).  The undersigned

agrees with the Commissioner that any failure to acknowledge plaintiff's use of a

cane is ameliorated by the fact that the ALJ included this limitation in the RFC. Thus, the undersigned finds no error.  Nevertheless, should the Court determine that remand is appropriate on plaintiff's first point of error, an updated credibility analysis may be required.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 23, 2018                   s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>February 23, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov